2000 ME 84

**Klemens BURDZEL Jr.**

v.

**Emily SOBUS et al.**

Supreme Judicial Court of Maine.

Argued April 3, 2000.

Decided May 12, 2000.

Dennis L. Jones (orally), Farmingdale, for plaintiff.

Stephen E.F. Langsdorf (orally), Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Augusta, for defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Klemens Burdzel Jr., (Klemens) appeals from an order of the Superior Court (Kennebec County, *Hjelm, J.*) granting defendants Emily Sobus and Raymond Burdzel's (Emily and Raymond's) motion for summary judgment against Klemens's claim for tortious interference with an expectancy. Klemens argues that the court erred in ruling that this claim is barred by the statute of limitations. We affirm.

## I. BACKGROUND [1]

[¶ 2] Klemens, Emily, and Raymond are all children of Klemens Burdzel Sr., (the decedent) who died in September, 1992. Klemens has resided outside of the State for several years. Emily and Raymond lived relatively close to the decedent. Prior to the decedent's death, Emily and Raymond actively assisted Klemens Sr. in his day-to-day activities. Among other involvement in the decedent's affairs, Emily and Raymond had their names placed on his checking account. In early 1988, Emily and Raymond contacted Attorney Eric Dick to assist in the drafting of the decedent's will. Almost all communication with Attorney Dick in relation to the decedent's will was conducted through Emily and Raymond. Attorney Dick testified in a deposition that he communicated with the decedent once over the phone prior to meeting him in his office on April 13, 1988, to execute the will. The will appointed Emily and Raymond to serve as the personal representatives for the decedent's estate. The will's sole gift to Klemens consisted of a coin collection which had existed for an extended period of time. In 1988, four years prior to the decedent's death, an inventory was taken of the collection. In November, 1992 Emily and Raymond delivered the coin collection to Klemens in accordance with the will's bequest. One hundred sixty-two coins recorded on the 1988 inventory were no longer part of the collection when Klemens received the collection from Emily and Raymond.

[¶ 3] In March, 1994, approximately eighteen months after the decedent's death, Emily and Raymond filed an application for informal probate of the will and for appointment as personal representatives pursuant to 18-A M.R.S.A. §§ 3-103 & 3-302 (1998). In February, 1995, Richard L. Burdzel, Brenda Morrisette, and Susan Walker, the decedent's grandchildren, petitioned the court for formal adjudication of intestacy and appointment of themselves as personal representatives pursuant to 18-A M.R.S.A. § 3-402 (1998). The grandchildren contended that the decedent lacked testamentary capacity when he executed his will and that Emily and Raymond had improperly distributed the estate during informal probate. In May, 1996, the grandchildren moved to dismiss their petition after arriving at a settlement with Emily and Raymond. The Probate Court (Kennebec County, *Voorhees, J.*) granted their unopposed motion and dismissed the petition in an order dated July 12, 1996. On March 4, 1997, the Probate Court issued an order of complete settlement in which it found that the will offered for probate was the decedent's will and that "the time for presenting claims which arose prior to death has expired."

---

1. Because this appeal arises from a grant of summary judgment, the facts on appeal are based solely on the parties' Rule 7(d) statements of material fact. *See Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 5, 721 A.2d 169, 172 (holding that a court ruling on a motion for summary judgment may consider "*only* the portions of the record referred to, and the material facts set forth in, the Rule 7(d) statements.").

[¶ 4] In June, 1997, Klemens commenced this suit with a complaint filed in the Superior Court asserting claims against Emily and Raymond for: (1) undue influence; (2) breach of a fiduciary relationship; (3) establishment of a constructive trust; (4) tortious interference with an expectancy; and (5) fraudulent, intentional, and malicious dissipation of the coin collection. The Superior Court granted summary judgment in favor of Emily and Raymond on all of Klemens's claims in two orders dated February 11, 1999, and October 8, 1999. The February order granted summary judgment in favor of Emily and Raymond on all of Klemens's counts except for that part of the fifth count alleging tortious dissipation of the coin collection based on the conduct of Emily and Raymond occurring after June 18, 1991, and before the date of the decedent's death.[2] The court's October order granted summary judgment against this remaining count on the ground that Klemens's Rule 7(d) statements failed to establish a prima facie case. Klemens filed a timely notice of appeal following this final judgment.

## II. DISCUSSION

[¶ 5] On appeal, Klemens only contests the court's grant of summary judgment against his claim for tortious interference with an expectancy.[3] The court granted summary judgment on this claim on the ground that it was barred by the statute of limitations because the cause of action accrued in April 1988 when the will was executed, more than six years prior to the filing of Klemens's complaint.

[¶ 6] We review a grant of summary judgment de novo for errors of law. *See Carroll v. City of Portland,* 1999 ME 131, ¶ 5, 736 A.2d 279, 282. We will affirm a grant of summary judgment if the record reflects that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. *See id.* A material fact is one having the potential to affect the outcome of the suit. *See Kenny v. Department of Human Services,* 1999 ME 158, ¶ 3, 740 A.2d 560, 562. A genuine issue exists when sufficient evidence supports a factual contest to require a factfinder to choose between competing versions of the truth at trial. *See Prescott,* 1998 ME 250, ¶ 5, 721 A.2d at 171–72.

[¶ 7] Klemens argues that the court erred when it concluded that his claim for tortious interference was barred by the six-year limitations period of 14 M.R.S.A. § 752 (1980).[4] Klemens contends that given the nature of the tortious interference claim, the limitations period "must . . . run only upon the death of the testator" because the claimant typically will not know about the drafting of the decedent's will and will be unaware of its contents until after the decedent's death. Klemens argues that the applicable statute of limitations should be 14 M.R.S.A. § 859 (Supp.

2. The court explained that it set the June 1991 limit because it was six years prior to the date Klemens's complaint was filed, and conduct prior to that date could not support his claim because of the six-year statute of limitations. The date of death limit was set because Klemens's statement of material fact establishes that he has no knowledge of who controlled the coin collection after that date.

3. Although Klemens narrowly focuses his appellate argument on his claim for tortious interference with an expectancy, we consider all of the factual allegations underlying his several counts for purposes of this appeal. We understand Klemens's position to be that the *factual allegations* underlying his counts for undue influence (count I), breach of fiduciary relationship (count II), and "fraudulent, intentional and malicious dissipation of the coin collection" (count V) are essential components of his general claim for tortious interference with an expectancy (count IV). Count III (constructive trust) suggests a remedy and was appropriately plead, but is not itself a cause of action. *See Sacre v. Sacre,* 143 Me. 80, 95, 55 A.2d 592, 600 (Me.1947) ("A constructive trust . . . is generally thrust on the trustee for the purpose of working out a remedy.").

4. Title 14 M.R.S.A. § 752 provides that "[a]ll civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards . . . ."

1999), which provides that actions based on fraud "may be commenced at any time within 6 years after the person entitled thereto discovers [the] cause of action."

[¶ 8] The court reasoned that because the decedent's will effectively ended Klemens's expectancy, the action must have accrued and the limitations period must have run, at the latest, upon the decedent's execution of the will. Although the court correctly concluded that the cause of action for tortious interference with an expectancy accrued at the time of interference, it does not necessarily follow that Klemens's claim is time-barred because it was not commenced within six years of its accrual.[5] In any event, we need not determine whether the court erred by granting summary judgment against Klemens's tortious interference claim on statute of limitations grounds, because the record does not generate a triable issue of material fact on the tortious interference claim. Accordingly, Emily and Raymond are entitled to a judgment as a matter of law on this alternative basis. *See Melanson v. Matheson*, 1998 ME 117, ¶ 1, 711 A.2d 147, 147 (holding that when a trial court's ultimate conclusion is correct as a matter of law, it must be sustained on appeal, although the conclusion may be based on an incorrect process of legal reasoning).

[¶ 9] In order to survive the motion for summary judgment, Klemens "must establish a prima facie case for each element of his cause of action." *See Barnes v. Zappia*, 658 A.2d 1086, 1089 (Me.1995). Thus, Klemens must establish that Emily or Raymond tortiously prevented the decedent from making a will favorable to Klemens; tortiously caused the decedent to revoke or alter a will more favorable to Klemens; prevented the decedent from revoking a will unfavorable to Klemens; or unlawfully caused the decedent to convey inter-vivos property that

would have passed to Klemens through the will. *See Cyr v. Cote*, 396 A.2d 1013, 1018 (Me.1979). If Klemens cannot establish a prima facie case, then Emily and Raymond are entitled to a judgment as a matter of law on Klemens's tortious interference claim. For purposes of this inquiry, we look only to the parties' Rule 7(d) statements and, more narrowly, only to those factual statements that are adequately supported by the record.

[¶ 10] In his statement of material fact filed in opposition to Emily and Raymond's first summary judgment motion, Klemens states that Emily and Raymond "were instrumental in the drafting and redrafting of [the decedent's] 1988 will"; that the decedent "was elderly [and] had more than [one] stroke and other infirmities of old age"; that Emily and Raymond "acted in [a] fiduciary capacity ... prior to the drafting of the 1988 will and subsequently"; that they "secured Klemens Burdzel's signature to place their names on [his] bank account"; that they "had transferred the sum of $100,000 with John Hancock for the benefit of the Defendants"; and that they "were in control of the assets of Klemens Burdzel's estate upon his death and made distribution[s] of portions of his estate without authority."

[¶ 11] Klemens references the deposition testimony of Attorney Dick in support of the contention that Emily and Raymond were instrumental in the drafting of the decedent's will. This testimony does support a conclusion that Emily and Raymond performed almost all of the communication required for the drafting of the decedent's will. It does not indicate, however, that the will executed by the decedent contained provisions that were contrary to the decedent's wishes or that it was a product of fraud, duress, undue influence, or the breach of a fiduciary duty. The same deposition testimony also tends to support

5. Pursuant to 14 M.R.S.A. § 859, in causes of action premised on fraud, the limitations period commences at the time the fraud is discovered, not at the time it is committed. Thus, if

Klemens's claim for tortious interference was supported by evidence of fraud, 14 M.R.S.A. § 859 would provide the applicable statute of limitations.

the factual allegation that the decedent was elderly and physically infirm. It does not indicate, however, that the decedent was mentally impaired or lacking in testamentary capacity.[6]

[¶ 12] Attorney Dick's testimony also supports the claim that Emily and Raymond's names were added to the decedent's bank account prior to his death. The attorney's testimony, however, reflects that their names were likely added to the account in order "to permit [Raymond] to help pay the bills and handle the accounts." Without more, this bare fact does not indicate malfeasance. In support of the statement that Emily and Raymond transferred $100,000 from the account for their own benefit, Klemens offers a checking account ledger that records a $100,000 payment to "John Hancock." The ledger does not indicate the nature of the investment made, the purpose of the investment, or its intended beneficiaries. Thus, the record does not support the allegation that $100,000 was tortiously transferred out of the decedent's estate for Emily and Raymond's benefit.

[¶ 13] Finally, we need not consider Klemens's contention that Emily and Raymond made wrongful distributions of property of the estate following the decedent's death. Even if these distributions were made in violation of defendants' fiduciary duty, that fact would not support a claim for tortious interference because it is not evidence of tortious conduct causing the testator to revoke or alter a will, preventing him from making or revoking his will, or causing him to convey inter-vivos what would have passed through his will. *See Cyr*, 396 A.2d at 1018.

[¶ 14] In Klemens's statement of material fact filed in opposition to Emily and Raymond's second motion for summary judgment, Klemens states that Raymond was in possession or control of the coin collection from 1988, the year of the inventory, through the decedent's death and that at least 162 coins were no longer in the collection that were there in 1988. In support of this statement, he offers his own affidavit, averring that 162 coins represented in the 1988 inventory were not delivered to him following the decedent's death. Although the record lacks an explanation for what became of these coins, Klemens offered no statement of material fact in proper form, *see* M.R. Civ. P. 7(d)(2), to support a claim of tortious conduct on the part of Emily or Raymond at any time between 1988 and 1992. The record cannot support a claim for tortious interference with an expectancy absent some evidence of tortious conduct on the part of Emily or Raymond.

[¶ 15] Because there exists no issue of material fact in the record supporting the existence of a prima facie case of tortious interference with an expectancy, Emily and Raymond are entitled to a judgment as a matter of law.

The entry is:

Judgment affirmed.

---

6. Although we have held that the testimony of a drafting attorney is "an inherently unreliable and inadmissible expression of the testator's intent," *Maietta v. Winsor*, 1998 ME 84, ¶ 7, 710 A.2d 238, 239, here Klemens attempts to use the attorney's deposition to imply malfeasance on the part of Emily and Raymond, not to prove the testator's intent.