STATE OF MAINE
CUMBERLAND, ss.



STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2005 MAY -6 P 2: 21

JUL 27

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-395

ᏝᎬᏨ-ᏟᏌᎷ - ᏝᏝᏝᏝᏝ

ELIZABETH WEAVER,
SUSANNA ADAMS,
LYDIA ADAMS and
BENJAMIN ADAMS

Plaintiffs

v.

MEREDITH HALL
     Defendant

ORDER ON DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT

This matter is before the court on defendant, Meredith Hall's, motion for partial summary judgment pursuant to M.R. Civ. P. 56.

## FACTUAL BACKGROUND

The following facts, except where noted, are undisputed: Plaintiffs Elizabeth Weaver, Susanna Adams, Lydia Adams and Benjamin Adams (plaintiffs) are all children of John Quincy Adams. John Quincy Adams (Adams) died on April 30, 2003 at the age of 95. His wife, Lucy, who had been terminally ill during the last several years of her life, predeceased Adams.

Defendant Meredith Hall enjoyed a long-standing friendship with Adams that existed for more than 25 years. Hall's friendship with Adams began through a shared interest in sailing. Hall's former husband frequently accompanied Adams sailing up and down the coast of Maine.

Under the terms of a will and trust executed by Adams on May 25, 1972, Adams's children were the beneficiaries of his entire estate. In the winter of 1985, Adams, who was a devoted advocate of land conservation in Lincoln, Massachusetts,

and his wife, decided to give a large part of the family farm into conservation, sell on fair terms the remaining portion of the family farm to his daughter's ex-husband, and to design and build a home in East Boothbay. Adams's children objected to the proposed sale and disposition of the Lincoln, Massachusetts property.

Adams, an architect, designed the East Boothbay home and hired Hall's son as his builder. Lucy, however, passed away shortly before the East Boothbay home construction was complete. Hall asserts that Adams expressed concern, frustration and anger to others because his children did not visit with, nor assist him in caring for, Lucy during her long illness. Plaintiffs admit that Adams expressed these feelings to others but deny that they did not visit with, nor assist with the care of, their mother.

Adams loaned Hall much of the money she needed to build a home in Pownal. The home included an apartment for Adams. In return, Hall executed a Promissory Note and Mortgage in favor of Adams. There is a dispute over whether Adams made all of the decisions that affected his life. Hall asserts that Adams made decisions regarding his meals, medical decisions and money management, loans to his children and gifts to his children. Plaintiffs, however, state that Hall had Adams's general power of attorney since 1993 and that Adams was largely dependent upon Hall.

On April 5, 1994 Adams executed a will (the 1994 Will) in which he expressly revoked all prior wills. The 1994 Will directed the administrators of Adams's estate to forgive any debt that Hall owed to Adams in connection with a loan for the construction of her Pownal home and Adams's apartment in that home. The 1994 Will also bequeathed Adams's Boothbay real estate to Hall. No challenge was ever made to the 1994 Will. In 1996 Adams created a trust (the 1996 Trust) for his benefit during his lifetime. Hall was the remainderman. On January 22, 1998, Adams transferred his wooden sailboat, the Oriole, as well as his Boothbay property to the 1996 Trust.

In April 2001 Adams met with the law firm in Boston, Ropes & Gray, which oversaw distributions to him from his late wife, Lucy's, trust. In a letter dated April 1, 2002 Adams wrote to his children and expressed his perception that they had "moved behind my back to keep me from receiving any funds from your mother's account." The plaintiffs admit that they believed Hall was manipulating Adams as early as 1998.

This action was initiated by plaintiffs on June 14, 2004. Plaintiffs have brought a cause of action for tortious interference with an expectancy. In the instant motion, Hall has moved for partial summary judgment arguing that insofar as plaintiffs' claim is based upon transfers that occurred more than six years prior to commencement of the action (prior to June 14, 1998) those claims are barred by the statute of limitations.[1]

## DISCUSSION

Summary judgment is proper if there is no genuine issue as to any material fact. *See Dickinson v. Clark*, 2001 ME 49, ¶ 4, 767 A.2d 303, 305. "A fact is material if it has the potential to affect the outcome of the case under governing law." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655 (citing *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575). "[S]ummary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine issue of fact exists. The Court cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial." *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206, 1209 (quoting *Tallwood Land & Dev. Co. v. Botka*, 352 A.2d 753, 755 (Me. 1976)).

---

[1] The court notes that defendant did not plead the statute of limitations as an affirmative defense in her answer as required under M.R. Civ. P. 8(c). Instead, defendant lists as affirmative defenses: (1) failure to state a claim upon which relief can be granted; (2) estoppel; (3) laches; (4) unclean hands. *See* Def's Answer at 3-4. Typically, failure to plead an affirmative defense constitutes a waiver of that defense. *See* M.R. Civ. P. 8(c); and *Inniss v. Methot Buick-Opel, Inc.*, 506 A.2d 212, 218 (Me. 1986).

In Maine, a cause of action for tortious interference with an expected inheritance is available when a person tortiously causes a testator to revoke or alter a will or estate plan or unlawfully causes a testator to convey inter vivos that which would have passed under a will. *Plimpton v. Gerrard*, 668 A.2d 882, 885 (Me. 1995); *Cyr v. Cote*, 396 A.2d 1013, 1018 (Me. 1979). The elements of the tort are: (1) the existence of an expectancy of inheritance, (2) interference with that expectancy through tortious conduct, such as fraud or undue influence, (3) a reasonable certainty that the expectancy would have been realized but for the interference, and (4) damage resulting from the interference. *Morrill v. Morrill*, 1998 ME 133, ¶ 13, 712 A.2d 1039, 1041-42.

A cause of action for tortious interference with an expected inheritance is governed by 14 M.R.S.A. § 752 (2003). *See id.*; and *Francis v. Stinson*, 2000 ME 173, ¶ 58, 760 A.2d 209, 220. Under that statute, plaintiffs' cause of action ordinarily must be commenced within six years after it accrues. *See* 14 M.R.S.A. § 752. In Maine, a claim for tortious interference with an expectancy generally accrues at the time of the interference, which is the time of the transfer of the asset which would have otherwise passed through the will, but for the claimed tortious interference. *See Burdzel v. Sobus*, 2000 ME 84, ¶ 8, 750 A.2d 573, 576; *Stinson*, 2000 ME 173, ¶ 58, 760 A.2d at 220. Accordingly, Hall argues that insofar as plaintiffs' claims are based on transfers made prior to June 14, 1998, six years prior to the commencement of the instant action, those claims are barred.

In opposition to Hall's motion, plaintiffs argue that, under Maine's tolling statute, the statute of limitations applicable to this case has been tolled by Hall's alleged tortious interference. According to plaintiffs, because an allegation of fraud tolls the statute of limitations and because, they contend, fraud is an element of a tortious interference with an expectancy claim, plaintiffs' claim did not accrue until the date the alleged interference was discovered.

14 M.R.S.A. § 859, Maine's tolling statute, reads in relevant part: "If a person . . . fraudulently conceals . . . [a cause of action], or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action." *Id.* Under section 859, therefore,

> there are two separate and distinct bases for tolling the statute [of limitations]. The first involves the fraudulent concealment from the plaintiff of the existence of a cause of action. The second concerns the situation in which the claim is itself grounded upon fraud. In either case the statute starts to run when the existence of the cause of action or fraud is discovered or should have been discovered by the plaintiff in the exercise of due diligence and ordinary prudence.

*Westman v. Armitage,* 215 A.2d 919, 922 (Me. 1966) (internal quotations omitted).

Accordingly, notwithstanding the general rule that a tortious interference with an expectancy claim accrues at the time of the transfer, insofar as plaintiffs' claim involves fraudulent concealment or is grounded upon fraud, "[section] 859 would provide the applicable statute of limitations." *Sobus,* ¶ 8, 750 A.2d at 576 n.5. In this case, plaintiffs have not alleged fraudulent concealment. Rather, plaintiffs argue that Hall's alleged tortious interference was grounded upon her exertion of undue influence over Adams. *See* Pls' Opp. to Def's Mot. Summ. J. at 2 (citing *DesMarais v. Desjardins,* 664 A.2d 840, 845 (Me. 1995)). Undue influence is a species of constructive fraud. *Cyr v. Cote,* 396 A.2d 1013, 1019 (Me. 1979). To the extent therefore that plaintiffs' claim is supported by evidence of undue influence, section 859 will apply. *See Sobus,* ¶ 8, 750 A.2d at 576 n.5.

In Maine, the Law Court has adopted the following definition of undue influence: "Undue influence is unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relation between them is justified in assuming that that person will not act in a manner inconsistent with his welfare." *Russo v. Miller,* 559 A.2d 354, 358 (Me. 1989) (quoting RESTATEMENT (SECOND)

OF CONTRACTS § 177 (1981)).  Factors that bear on the question of undue influence can include: (1) the existence of a confidential relationship; (2) an unnatural or unexpected disposition of property; (3) mental infirmity; and (4) whether the grantor had the benefit of independent legal advice. *Id.* at 358.

In their complaint, plaintiffs allege that, in the years before his death, Adams was elderly, mentally and physically infirm and susceptible to undue influence and suggestion.  Complaint at ¶ 13.  Plaintiffs also allege that they were the primary beneficiaries of the bulk of Adams's estate under wills and trusts created in 1972 and 1994.  *Id.* at ¶ 12.  In addition, plaintiffs allege that Hall developed a confidential relationship with Adams wherein he became dependent upon her and that, by the time of his death, most of Adams's assets had been transferred to or for the benefit of Hall. *Id.* at ¶¶ 15 & 18.  Although Hall disputes the allegation that Adams was infirm and that she unduly influenced him, plaintiffs' assertions relating to undue influence are sufficient to prevent the court from concluding, at this stage, that there was no fraud. *See* Def's Answer at ¶¶ 13-19; *and* Pls' S.M.F. ¶¶ 3-5.  Accordingly, the court concludes that, for the purposes of this summary judgment motion, section 859 provides the applicable statute of limitations in this case and plaintiffs' cause of action will be deemed to have accrued when any alleged tortious interference, was "discovered or should have been discovered . . . in the exercise of due diligence and ordinary prudence." *Westman*, 215 A.2d at 922.

With respect to the question of when plaintiffs discovered or should have discovered Hall's alleged tortious interference, plaintiffs contend that that discovery took place after June 14, 1998.  Consequently, they argue that their cause of action as it relates to any pre-June 14, 1998 transfers did not accrue until after that date because it was tolled under section 859.  Hall contends, however, that because plaintiffs have admitted that they believed she was manipulating Adams as early as 1998, any alleged

tortious interference was in fact discovered more than six year prior to the filing of this action and plaintiffs' claim is consequently barred. *See* Def's Supp. S.M.F. ¶ 44; Pls' Opp. S.M.F. ¶ 44. *See also* Def's Reply at 2. Hall further argues that because Adams's pre-June 14, 1998 transfers were recorded in the registry of deeds and a matter of public record, plaintiffs should have discovered them more than six years before the filing of the instant action. Accordingly, Hall argues that plaintiffs' cause of action accrued prior to June 14, 1998 and, as a result the usual six-year statute of limitations applies and has run. The court disagrees.

Contrary to Hall's assertions, the mere fact that Adams's pre-June 14, 1998 transfers of real estate were recorded and thus a matter of public record is not sufficient to have put plaintiffs on notice of Hall's alleged tortious interference. *See Westman*, 215 A.2d at 922 (explaining that the recording of a deed is constructive notice only to subsequent purchasers and, further, constitutes constructive notice only of the transfer not of the alleged fraud). Further, although plaintiffs admit that they believed Hall was manipulating Adams as early as 1998, that admission does not, as Hall contends, necessitate a finding that plaintiffs discovered or should have discovered Hall's alleged manipulation with respect to the transfer of Adams's assets. Plaintiffs admitted only that they believed Hall was manipulating Adams. *See* Def's Supp. S.M.F. ¶ 44; Pls' Opp. S.M.F. ¶ 44. They did not specify, however, whether their suspicions related to Adams's transfers of property or whether, instead, they related to other matters not bearing on Adams's disposition of his assets. There remains, therefore, a dispute of material fact as to whether plaintiffs had discovered or should have discovered Hall's alleged tortious interference with plaintiffs' expected inheritance. Because Hall bears the burden of proof on her statute of limitations defense, *see Northeast Harbor Golf Club, Inc. v. Harris*, 1999 ME 38, ¶ 15, 725 A.2d 1018, 1023, and she has failed to establish that

she is entitled to judgment as a matter of law on that point, the court DENIES Hall's motion for partial summary judgment.

The entry is

Defendant's Motion for partial summary judgment is DENIED.

Dated at Portland, Maine this ___6th___ day of May, 2005.

Robert E. Crowley
Justice, Superior Court

CLERK OF COURTS
Cumberland County
P.O. Box 287
Portland, Maine 04112-0287

GRAYDON STEVENS ESQ
KELLY REMMEL & ZIMMERMAN
PO BOX 597
PORTLAND ME 04112-0597

CLERK OF COURTS
Cumberland County
P.O. Box 287
Portland, Maine 04112-0287

JUDY METCALF ESQ
EATON PEABODY
PO BOX 9
BRUNSWICK ME 04011-0009