2007 ME 99

**Kim SMALL et al.**

v.

**DURANGO PARTNERS, LLC, et al.**

Supreme Judicial Court of Maine.

Submitted On Briefs: March 29, 2007.

Decided: July 31, 2007.

John H. Branson, Esq., Law Office of John H. Branson, P.A., Portland, for plaintiffs.

Harrison L. Richardson, Esq., Carol I. Eisenberg, Esq., Richardson Whitman Large & Badger, P.C., Portland, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] Kim Small and James Cunningham, d/b/a Phantom Kitty Komix, appeal from a summary judgment entered against them in the Superior Court (Cumberland County, *Crowley, J.*) on their complaint, alleging negligence with respect to the loss of their business property located in premises leased from Durango Partners, LLC and Turner Barker Realty, Inc. Small and Cunningham contend that the court erred by concluding that the terms of the lease governed the parties' relationship in their continued occupancy of the premises after the lease expired, and that they were precluded from recovering from Durango and Turner Barker for damage to their property. Small and Cunningham also contend that the court improperly concluded that they had no claim for lost profits resulting from the damage to their business. Finding no error, we affirm the judgment.

## I. BACKGROUND

[¶ 2] The evidence, viewed in the light most favorable to Small and Cunningham, the parties against whom summary judgment has been granted, *see Rogers v. Jackson*, 2002 ME 140, ¶ 5, 804 A.2d 379, 380, reveals the following: Small and Cunningham, d/b/a Phantom Kitty Komix, operated a business selling comic books, collectibles, and related items. They entered into a lease for a commercial property, located at 51 Oak Street in Portland, with Durango Partners, LLC, a Maine Limited Liability Company. Turner Barker Realty acted as Durango's agent in the management and maintenance of the building. Handwriting on the lease document indicated that the lease ran from January 1, 2001, to December 31, 2003.

[¶ 3] When the lease expired on December 31, 2003, it was not renewed. Paragraph 20 of the lease provided as follows:

20). HOLDOVER: If the Premises are retained by Tenant with the written consent of Landlord beyond the term of this Lease or any extension or renewal thereof, tenant shall be considered to be a tenant at will on all of the terms and conditions of this Lease, including the payment of rent. If such holding over is not with Landlord's written consent, no tenancy at will shall be created and the Tenant must vacate the Premises immediately on demand by Landlord.

Small and Cunningham continued to operate their business on the premises as they had during the term of their lease. The parties dispute whether, pursuant to paragraph 20, Durango ever gave its written consent to Small and Cunningham to continue to rent the space after the expiration of the lease. According to a revised affidavit signed by G. Kevin McQuinn, the agent for Durango and Turner Barker, he sent a letter, dated January 15, 2004, to Small and Cunningham, pursuant to paragraph 20, granting them consent to remain on the premises as a tenant at will on a month-to-month basis under all of the terms and conditions of the original lease. According to Small, the letter was never received, and the first time that McQuinn mentioned that the lease had expired was in August of 2004, at which time he made no indication that he intended that the lease be renewed.

[¶ 4] On November 11, 2004, while Small and Cunningham were still operating their business in the building, a problem with a boiler resulted in serious flooding in the basement, causing great damage and destruction to Small and Cunningham's inventory stored in that basement. On November 14, 2004, while electrical heaters were being used to dry out the carpets at

an adjacent restaurant, also damaged by the flooding, an electrical fire broke out, causing smoke and water damage to Small and Cunningham's inventory not previously damaged by the flooding. Small and Cunningham allege that there were no working smoke detectors or sprinklers in the buildings. Phantom Kitty Komix could not recover from the two incidents, and went out of business.

[¶ 5] In November of 2005, Small and Cunningham filed a complaint against Durango and Turner Barker alleging negligence in the maintenance of the building. Durango relied on the terms of paragraph 9 of the lease to contend that it was not liable for any damages suffered by Small and Cunningham. Paragraph 9 provides:

> 9). LOSS, DAMAGE TO [PERSONALTY]: All property of the Tenant or of Tenant's employees, customers and invitees or others on the Premises shall be held at Tenant's sole risk and Landlord shall not be liable for any loss, damage or destruction of any such property by fire, theft or any other cause. Contents insurance shall be the sole responsibility of Tenant. Tenant agrees to hold Landlord harmless from all claims by Tenant or any other person claiming by, through or under Tenant, including but not limited to customers, employees, guests and invitees of Tenant, by way of subrogation or otherwise, arising from the destruction of, loss of or damage to any personal property located in or about the Premises or the Building belonging to Tenant or others, whether or not caused by a condition of the premises . . . .

[¶ 6] Durango and Turner Barker moved for a summary judgment.[1] In entering a summary judgment in favor of Durango and Turner Barker, the Superior Court concluded that the issue of whether McQuinn sent the January 15, 2004, letter was immaterial to the disposition of the suit because, pursuant to the common law, in the circumstances of this case, Small and Cunningham were holdover tenants, and their responsibility for damage to their own property was the same as it was prior to the time the lease expired. Accordingly, the court determined that Small and Cunningham are precluded from recovering for the damage to their personalty, and for the loss of their business. Small and Cunningham filed this appeal.

## II. DISCUSSION

### A. Materiality of the January 2004 Letter

■ [¶ 7] Durango and Turner Barker argue that there is no genuine issue with respect to whether the January 2004 letter confirming that their holdover tenancy was subject to the terms of the lease was, in fact, sent to Small and Cunningham. "A genuine issue exists when sufficient evidence supports a factual contest to require a factfinder to choose between competing versions of the truth at trial." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575.

[¶ 8] Based on the parties' M.R. Civ. P. 56(h) statements of material fact, and the portions of the record to which the parties referred, *see Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 5, 721 A.2d 169, 172,

1. The original basis of Durango's motion for a summary judgment was that the lease did not expire until December 31, *2008*, instead of *2003*, and, pursuant to paragraph 9, the landlord could not be held liable for the damage to Small and Cunningham's property. Attached to the motion was the affidavit of McQuinn, which stated that the term of the lease expired on December 31, *2008*. After determining that there was an error in the affidavit, Durango filed a revised affidavit along with the revised motion for a summary judgment.

the record reveals a genuine issue of fact regarding the authenticity of the January 15, 2004, letter asserted to have been sent by Durango and Turner Barker, and whether Small or Cunningham ever received this letter. Although there is a genuine dispute of fact about whether the letter was sent and received, the Superior Court determined that that fact is not *material* to the result in this case, *see Burdzel,* 2000 ME 84, ¶ 6, 750 A.2d at 575 (stating that a fact is material if it has "the potential to affect the outcome of the suit"), and that pursuant to the common law, the terms of the lease continued to govern Small and Cunningham's occupancy of the premises.

## B. Terms Applying to Holdover Tenancy

■ [¶ 9] Small and Cunningham contend that the Superior Court erred by substituting common law rules regarding holdover for the express and precise terms of the written lease agreement by the parties. They contend that because there was no letter written by Durango pursuant to paragraph 20 of the lease consenting to their retention of the leased premises, the terms of the lease, including the provisions in paragraph 9 governing loss and damage to personalty, were not applicable. Accordingly, Small and Cunningham argue that Durango can and should be held liable for negligence as to the flooding and the fire.

■ [¶ 10] The common law governs relations between a landlord and tenant unless there is an agreement between the parties to the contrary. *See Cunningham v. Holton,* 55 Me. 33, 38 (1867) (holding that "[i]n the absence of express stipulation it is a general rule of the common law, that, if a tenant hold from year to year, notice must be given ending with the year of the tenancy").

[¶ 11] Pursuant to paragraph 20 of the lease, if Small and Cunningham were holding over beyond the term of the lease *with* the written consent of Durango, a fact which is disputed, then they would be tenants at will, subject to all of the terms and conditions of the lease, including the payment of rent. If the holdover was *without* the written consent of the landlord, as Small and Cunningham contend, then they would not be tenants at will, and, they argue, they should not be subject to the terms and conditions of the lease.

■ [¶ 12] Although the lease states that a tenancy at will is *not* created in such a holdover situation, it does not state what type of tenancy *is* created, nor does the lease set out the terms of such a tenancy. The Superior Court concluded that Small and Cunningham were holdover tenants, regardless of whether a tenancy at will was created.[2] The Superior Court relied on the common law, under which the legal positions of a landlord and tenant during a holdover period are the same as during the period of the lease, unless the lease expressly and unambiguously disclaims any of these rights and responsibilities. *See* RESTATEMENT (SECOND) OF PROPERTY § 14.7 cmt. b (1977). This common sense rule that disputes are governed by provisions of the lease recognizes and preserves a continuity of expectations of

---

2. In the context of holdover tenants, the modern RESTATEMENT (SECOND) OF PROPERTY does not distinguish between tenancies at sufferance, and tenancies at will, but simply refers to tenants who hold over. *See* RESTATEMENT (SECOND) OF PROPERTY §§ 14.1–14.9 (1977). "A [tenancy] at suffer- ance is an interest which arises when one comes into possession by lawful title otherwise than by act of law, but retains such possession longer that he has any right." *Irving Oil Corp. v. Me. Aviation Corp.,* 1998 ME 16, ¶ 7, 704 A.2d 872, 874 (quotation marks omitted).

rights and duties during a period of holdover.

[¶ 13] The lease in this case provided for the contingency of a holdover period: that a tenancy at will, subject to all of the terms of the lease, would be created if the landlord consented in writing to the holdover. Without this written permission of the landlord, no tenancy at will is created, and the tenant is subject to eviction without the common law notice requirements. The lease, however, does *not* modify or otherwise unambiguously disclaim any other terms of the lease during such a holdover period, including paragraph 9 of the lease, when the landlord does not give written permission. Accordingly, there is no error in the Superior Court's conclusion that all the terms of the lease, except notice to vacate, remain applicable during Small and Cunningham's holdover, and although there is a genuine issue of fact regarding the January 2004 letter, this is not material to this case. *See Burdzel,* 2000 ME 84, ¶ 6, 750 A.2d at 575. Such a result is anticipated by the lease agreement, and is also consistent with the common law.

### B. Small and Cunningham's Claims for Damages to Property

[¶ 14] Small and Cunningham allege that the personal property of their business was damaged as a result of Durango and Turner Barker's negligent maintenance of the building, resulting in the initial flooding from the water boiler, and the subsequent fire caused by the use of equipment to dry out the other business in the building affected by that flooding.

[¶ 15] Paragraph 9 of the lease, however, expressly provides that Small and Cunningham bear the risk of loss for their personal property contained within the premises, and that they agree to hold Durango (and Turner Barker as Durango's agent) harmless for any loss, even when that loss stems from a condition of the building.

[¶ 16] Accordingly, under provisions of the lease still applicable to Small and Cunningham during their holdover period, whether with or without Durango's written consent, Small and Cunningham bore the risk of loss to their property, and cannot now seek to hold Durango and Turner Barker liable for that loss. Indeed, it would be strange if Small and Cunningham were responsible for having contents insurance and for any loss that occurred to their property during the term of the lease, but did not have such a responsibility during a period of holdover even though the lease did not specifically state that the provisions of paragraph 9 no longer applied. Absent a specific provision in the lease, Small and Cunningham were not in a better position for having remained in the premises beyond the expiration of the lease.

### C. Small and Cunningham's Claims for Lost Business and Profits

■ [¶ 17] The separate claim made by Small and Cunningham for damages stemming from lost business and profits is also without merit. The loss of business and of profits from their comic book store flows from the loss of their property, the inventory. They have advanced no credible claim for any other loss for which Durango and Turner Barker, as landlord, are liable. In the summary judgment proceedings, Small and Cunningham cannot rely solely on the allegations in their complaint. *See Estate of Althenn v. Althenn,* 609 A.2d 711, 714 (Me.1992). Because they would have the burden of proof at trial, they were "required to produce evidence sufficient to resist a motion for a directed verdict if [they] produced at trial nothing more than was before the court on the

motion for summary judgment." *Id.* Small and Cunningham failed to produce any evidence of lost profits that did not flow from the loss of the business's personal property, for which they had assumed responsibility. Accordingly, the Superior Court correctly concluded that they have no separate claim for lost business or profits.

The entry is:

Judgment affirmed.