STATE OF MAINE
YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-2017-0150

DANIEL ARBO and LISA ARBO,[1]          )
                                       )
          Plaintiffs,                  )
                                       )
     v.                                )          **ORDER ON PLAINTIFFS'**
                                       )          **MOTION FOR RECONSIDERATION**
TOWER GROUP, INC. d/b/a TOWER          )
GROUP COMPANIES, and MAINE             )
INSURANCE GUARANTY                     )
ASSOCIATION,                           )
                                       )
          Defendants.                  )

Pending before the Court is Plaintiffs' Motion for Reconsideration of the Court's Order

granting Defendant Maine Insurance Guarantee Association's Motion for Summary Judgment on

all counts of the Plaintiffs' Complaint. Plaintiffs contend the Court erred by granting summary

judgment against them on their breach of contract claim on an issue not raised by either party.

"A defendant moving for a summary judgment has the burden to assert those elements of

the cause of action for which the defendant contends there is no genuine issue to be tried."

*Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 9, 742 A.2d 933. Plaintiffs contend

MIGA's sole argument with respect to their breach of contract claim was "that there were no

disputed facts relevant to the analysis of whether the corporate veil separating York and Tower

should be disregarded . . . ." (Pls.' Mot. Reconsideration, at 1.)

---

[1] Subsequent to the filing of the present Motion for Reconsideration, Plaintiffs' counsel filed a Notice of Death pursuant to M.R. Civ. P. 25(a)(2) informing the Court of the untimely passing of plaintiff Lisa Arbo. Daniel Arbo did not move to substitute parties pursuant to M.R. Civ. P. 25(a)(1) because he had not been appointed personal representative of Lisa Arbo's estate, and therefore the parties named in the caption have not been changed. Mr. Arbo may file such motion, if he desires, within the timeframe prescribed by M.R. Civ. P. 25(a)(1).

To the contrary, MIGA argued "the Arbos claims are not 'covered claims existing prior to the determination of the insolvency,' and MIGA has no obligation to pay any money to the Arbos. 24-A M.R.S. § 4438(1)." (Def.'s Mot. Summ. J., at 11.) MIGA noted that its obligation is to "stand[] in the shoes of an insolvent insurer when assessing claims against [an] insolvent insurer." (*Id.* at 11.) MIGA asserted a number of facts which established that York Insurance Company of Maine, and not Tower Group, Inc., was the only company that could be considered an "insurer," "member insurer," or "insolvent insurer" such that the Arbos' claim would be considered a "covered claim" under the Maine Insurance Guarantee Association Act. (*See* DSMF ¶¶ 34-44); 24-A M.R.S. § 4435. Plaintiffs were therefore put on notice that they would have to demonstrate that there was a legitimate factual dispute as to whether their claims were both "covered" and timely.

The Arbos responded to MIGA's Motion for Summary Judgment by arguing the doctrine of alter ego liability should apply such that the finder of fact could disregard the separate corporate identities of York Insurance Company of Maine and Tower Group, Inc. Plaintiffs did not supportably refute MIGA's factual averments pertinent to the question of whether their claim was a timely, covered claim. Plaintiffs simply demonstrated that a finder of fact might be able to disregard the separateness of two corporate entities, one foreign and one domestic, without any elaboration as to how that, in turn, would transmute the Tower/York corporate amalgam into a foreign, insolvent, member insurer such that their claims would be both timely under the Maine Insurance Code and "covered" under the Maine Insurance Guarantee Association Act.

Based on the factual record and the arguments presented in the parties' memoranda of law, the Court granted summary judgment to MIGA on the Arbos' breach of contract claim because Plaintiffs could not demonstrate their policy was issued by an "insurer" that was

2

requisitely "foreign," "insolvent," and a "member" of the Maine Insurance Guarantee Association such that their claim would not be time-barred by the applicable statute of limitations, or for which MIGA would be obligated to pay as a "covered claim."

Accordingly, the entry shall be:

"Plaintiffs' Motion for Reconsideration of the Order on Maine Insurance Guarantee Association's Motion for Summary Judgment Dated December 4, 2018 is DENIED."

The clerk shall incorporate this order on the docket by reference pursuant to M.R. Civ. P. 79(a).

SO ORDERED.

Dated: 2/26/19

John O'Neil, Jr.
Justice, Superior Court

Entered on the Docket on: 2/26/19
Copies sent to the following parties/counsel on: 2/26/19
Attorney Martin    Attorney Rapaport
Attorney Almy      Attorney Connolly

3

STATE OF MAINE                                    SUPERIOR COURT
YORK, ss.                                          CIVIL ACTION
                                                   DOCKET NO. CV-17-150


DANIEL ARBO and LISA ARBO          )
                                   )
              Plaintiffs,          )
                                   )
       v.                          )        **ORDER ON DEFENDANT MAINE**
                                   )        **INSURANCE GUARANTEE**
TOWER GROUP, INC. d/b/a TOWER      )        **ASSOCIATION'S MOTION FOR**
GROUP COMPANIES, and               )        **SUMMARY JUDGMENT**
MAINE INSURANCE GUARANTY           )
ASSOCIATION,                       )
                                   )
              Defendants.          )

This case concerns Defendants' liability for certain losses sustained by Plaintiffs Daniel

and Lisa Arbo as a result of a fire that destroyed their home on May 3, 2013. Defendant Maine

Insurance Guaranty Association ("MIGA") now moves for summary judgment on all counts in

the Plaintiffs' complaint, arguing the Arbos' claims are time-barred by the statute of limitations

provided for in their insurance policy.

## I.    Background

### A. Procedural History

Plaintiffs filed a three-count complaint on June 15, 2017, naming Tower Group and

MIGA as defendants and seeking recovery under theories of breach of contract and unfair claim

settlement practices. (Pl.'s Compl. ¶¶ 52-57.) Plaintiffs further sought to estop Tower Group

from asserting contract provisions that are inconsistent with certain provisions of the Maine

Insurance Code. (*See id.* ¶¶ 50-51.)

1

On March 15, 2018, MIGA moved for summary judgment on all counts in Plaintiffs' complaint, supported by a Statement of Undisputed Material Facts ("SUMF"). Plaintiffs filed an opposition and submitted a Statement of Additional Material Facts ("SAMF").

## B. Factual Record

This case arises out of a fire that destroyed the Arbos' home located at 41 Oak Terrace in Kittery, Maine on May 3, 2013. (SUMF ¶¶ 1, 10.) At the time of the fire, the Arbos had an insurance policy that provided home and automobile coverage. (SUMF ¶¶ 2-4.) Section I of the Arbos' insurance policy provided the necessary conditions for submitting a claim. (SUMF ¶ 7.) Another provision of the insurance policy provided: "No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss." (SUMF ¶ 9.)

Part of Arbos' claim based on the fire was paid in June and July of 2013. (SAMF ¶ 4.) The remainder of the Arbos' claim was denied on June 16, 2015. (SUMF ¶ 26.) The parties dispute whether the claim was rightfully denied under the terms of the policy, particularly whether the Arbos complied with the terms of Section I of the policy.

York Insurance Company of Maine was a domestic insurer formed under the laws of the State of Maine, was domiciled in Maine, and was identified as such in its 2013 Annual Statement filed with the Maine Secretary of State. (SUMF ¶¶ 34-36.) Tower Group, Inc. was a publicly traded insurance holding company organized under the laws of the state of New York that, between March 2013 and June 2015, owned York Insurance Company of Maine. (SUMF ¶¶ 37-38.) Between March 2013 and June 2015, York Insurance Company of Maine operated or did business in Maine under the trade name "Tower Group Companies." (SAMF ¶ 8.)

2

The Arbos maintain that Tower Group, Inc. was their insurer, while MIGA contends York Insurance Group of Maine was the insurer, and was at all relevant times separate and distinct from Tower. (SUMF ¶¶ 32, 41.)

In July 2016, York Insurance Company of Maine was merged into Castlepoint National Insurance Group, which was in turn declared legally insolvent by a California state court on March 30, 2017. (SUMF ¶¶ 42, 44.) Neither the Arbos nor MIGA have pointed to any record evidence indicating Tower Group, Inc. was ever declared insolvent by a court of competent jurisdiction. (*See generally*, SUMF; SAMF.)

The "Declarations" page of the Arbos' insurance policy designated "Company: YORK INSURANCE COMPANY OF MAINE." (SUMF ¶ 5.) The policy further provided that references to "we," "us," and "our" within the policy referred to "the Company Providing this insurance." (SUMF ¶ 6.) The Arbos were also provided insurance cards in connection with their automobile coverage that identified the insuring "Company" was "York Insurance Company of Maine." (SUMF ¶ 5.)

Part of the Arbos' initial claim was paid by two checks dated June 28, 2013 and July 5, 2013 issued by Tower Insurance Company, 120 Broadway, New York, New York. (SAMF ¶ 4.) The only address listed in the Arbos' insurance policy, besides theirs and that of their local agent, was 120 Broadway, 31st Floor, New York, New York. (SAMF ¶ 10.) Each officer and director of the York Insurance Company of Maine had a mailing address of 120 Broadway, 31st Floor, New York, NY. (SAMF ¶ 36.)

The Tower Group Companies logo is located on every page of the Arbos' policy. (SAMF ¶¶ 9, 32.) The Declarations page also stated "The UNITED INSURANCE, HAYDEN PERRY INSURANCE AGENCY, and TOWER GROUP COMPANIES are pleased to present

3

you with your new OneChoice package insurance policy." (SAMF ¶ 11.) A notice within the policy provided that the Arbos could "elect to receive online documents relating to your insurance policy issued by Tower Group Companies." (SAMF ¶ 12.) The website on which the Arbos could elect to receive online documents was a Tower Group website and makes no reference to York Insurance Group of Maine. (SAMF ¶ 13.) The privacy policy associated with the insurance policy refers to Tower Group, bears the Tower Group Companies logo, and makes no reference to York Insurance Group of Maine. (SAMF ¶¶ 14-15.) The roadside assistance coverage notice and the roadside assistance program cards issued with the Arbos' policy bear the Tower Group companies logo and make no reference to York Insurance Company of Maine. (SAMF ¶¶ 17-20.) The Adverse Underwriting Notice provided with the policy was issued by Tower. (SAMF ¶ 21.) The insurance cards issued in association with the policy's automobile coverage were signed by Elliot S. Orol, who was an officer of Tower in March 2013. (SAMF ¶¶ 22-23.) The Arbos received billing documents that bore the Tower Group Companies logo and address. (SAMF ¶¶ 24-25.) Debits from the Arbos' bank account as premium payments under the policy were designated as withdrawals to "Tower Insurance webprepmt." (SAMF ¶ 26.)

A number of York Insurance Company of Maine's officers and directors were also officers of Tower Group, Inc., namely William E. Hitselberger, William F. Dove, Scott T. Melnik, Elliot S. Orol, and Catherine M. Wragg. (SAMF ¶ 37.) Vito Nigro served as officer, and Bruce Sanderson served as director, of York in 2013 and 2014. Both men were also officers of Tower Insurance Company of New York, a subsidiary of Tower Group, Inc. and third-party administrator of the Arbos' insurance policy. (SAMF ¶¶ 38-39.) Seven of York's senior corporate officers listed in 2013 filings with the Maine Secretary of State are also listed as

officers of Tower in 2013 filings with the United States Securities and Exchange Commission. (SAMF ¶¶ 41-42.)

MIGA could not provide any information in discovery indicating that York and Tower were separate and distinct corporate entities at any point between march 2013 and June 2015. (SAMF ¶¶ 46-47.) At all relevant times, Plaintiff Daniel Arbo believed his insurer was Tower Group, based on the references to Tower within the policy, the contact information and physical location, and his contacts with insurance representatives at "twrgrp.com" email addresses. (SAMF ¶¶ 43-45.)

## II.   Discussion

The central focus of the parties' arguments focus on whether the Arbos' insurer was York Insurance Company of Maine ("York") or Tower Group, Inc. ("Tower"). The critical distinction is that the Maine Insurance Code provides that insurance policies may provide different statutes of limitations for bringing claims based on the insurer's status as a "domestic" or "foreign" insurer. The parties agree that York would be deemed a domestic insurer, while Tower would be deemed a foreign insurer.

The Maine Insurance Code provides that domestic insurers may issue policies with provisions that require insureds to initiate legal action against the insured for non-payment of claims within two years of the date of loss. *See* 24-A M.R.S. § 3002. The Arbos' policy contained a provision consistent with section 3002. (SUMF ¶ 9.) MIGA argues York Insurance Company of Maine was the Arbos' insurer and the statute of limitations to bring the present action elapsed on May 3, 2015—two years from the date of their loss.

The Maine Insurance Code further provides that foreign insurers may, by contract, limit the period for bringing claims against them to no less than two years from the date the claim is

5

denied. *See* 24-A M.R.S. § 2433. The Arbos argue that Tower Group, Inc. was their insurer, and therefore the present action was timely brought within two years of the date on which their claims were ultimately denied on June 16, 2015.

## A. Summary Judgment Standard

Summary judgment is proper where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Stanley v. Hancock County Comm'rs*, 2004 ME 157, ¶ 13, 864 A.2d 169; *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653; M.R. Civ. P. 56(c).

On a motion for summary judgment, the court takes all facts and inferences in favor of the non-moving party. *LePage v. Bath Iron Works Corp.*, 2006 ME 130, ¶ 9, 909 A.2d 629. "Summary judgment is appropriate when the record reveals no [genuine] issues of material fact in dispute." *Id.* "A fact is material if it has the potential to affect the outcome of the case." *Id.* "A genuine issue exists when sufficient evidence supports a factual contest to require a factfinder to choose between competing versions of the truth at trial." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573. "Summary judgment is appropriate . . . 'if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Dyer v. DOT*, 2008 ME 106, ¶ 14, 951 A.2d 821.

"To withstand 'a motion for a summary judgment, the plaintiff must establish a prima facie case for each element of her cause of action. If a plaintiff does not present sufficient evidence on the essential elements . . . the defendant is entitled to a summary judgment.'" *Watt UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897.

## B. Tower's Liability as "Alter Ego" of York

6

The Arbos contend the alter ego theory of liability applies in this case, whereby the factfinder will be permitted to look past York's separate corporate form to hold Tower, its parent corporation, liable under the insurance contract.

A hallmark and principal benefit of the corporate form is limited liability of shareholders for the obligations of the corporation. *LaBelle v. Crepeau*, 593 A.2d 653, 655 (Me. 1991). "Alter ego" liability is a subset of the piercing the corporate veil doctrine under which the principally-liable corporation's corporate form may be disregarded to hold a parent or sister corporation liable. *See Masi v. Keeley Crane Serv. & Keeley Constr. Co.*, 2011 Me. Super. LEXIS 38, \*11-\*14 (March 18, 2011) (citations omitted).

The law permits the corporate veil to be pierced "when the party seeking to do so establishes that the other party [1] 'abused the privilege of a separate corporate identity' and [2] 'an unjust or inequitable result would occur if the court recognized the separate corporate existence.'" *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 10, 901 A.2d 189 (quoting *State v. Weinschenk*, 2005 ME 28, ¶ 19, 868 A.2d 200); *see also Stanley v. Liberty*, 2015 ME 21, ¶ 27, 111 A.3d 663. "Whether the corporate form should be disregarded involves questions of fact for a fact-finder to decide." *Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 43, 980 A.2d 1270 (citing *Advanced Constr*, 2006 ME 84, ¶ 10, 901 A.2d 189).

The Law Court has cited with approval an exhaustive, multi-factor approach to determining whether the abuse of privilege prong has been satisfied. *See Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶ 7, 720 A.2d 568 (quoting *The George Hyman Constr. Co. v. Gateman*, 16 F. Supp. 2d 129, 149-50 (D. Mass. 1998)). These factors are:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity[,] assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the

dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; [and] (12) use of the corporation in promoting fraud.

*Id.*

In *State v. Weinschenk,* the Law Court held that the trial court properly pierced the corporate veil to hold a homebuilding company's sole officer and director, and principal representative, liable when the corporation "was thinly capitalized and insolvent at the time of trial[,]" and he "had pervasive control over [the company.]" 2005 ME 28, ¶ 20, 868 A.2d 200.

Plaintiffs have adduced sufficient evidence to demonstrate the existence of a legitimate factual dispute with respect to the "abuse of privilege" prong. They have demonstrated common ownership, management, and control of York by Tower, the insolvency of York, and the absence of evidence tending to show York was separate and distinct from its parent corporation.

The question then becomes whether Plaintiffs have put forth a prima facie case with respect to the "inequitable result" prong. The Law Court has held that "the second prong of the piercing doctrine does not require a finding of fraud or illegality." *Johnson v. Exclusive Props. Unlimited,* 1998 ME 244, ¶ 8, 720 A.2d 568. The Law Court has suggested that an unjust or inequitable result inheres when a defendant engages in a wrongful act, such as misrepresentation, and a plaintiff would otherwise be limited to recovering from a bankrupt or judgment-proof corporation. *See Blue Star Corp. v. CKF Props., LLC,* 2009 ME 101, ¶ 47, 980 A.2d 1270; *Weinschenk,* 2005 ME 28, ¶ 20, 868 A.2d 200.

Viewing the evidence in the light most favorable to the Arbos, Tower held itself out as the Arbos' insurer throughout the life of their policy and the claim settlement process, only to deny the remainder of the claim after the statute of limitations for bringing a cause of action against a domestic insurer had elapsed. Thus, the Court is compelled to find that there is a

8

sufficient factual dispute with respect to the second prong of the veil piercing doctrine to withstand summary judgment.

Plaintiffs have put forth a *prima facie* case that York Insurance Company of Maine should be considered an alter ego of Tower Group, Inc. Accordingly, summary judgment on the question of alter-ego liability is not warranted at this juncture.[1]

## C. MIGA's Liability

MIGA was established by the Maine Insurance Guarantee Association Act ("the Act"), 24-A M.R.S. §§ 4431-4452. *See* 24-A M.R.S. § 4436. Among the purposes of the Act are "to provide a mechanism for the payment of covered claims . . . to avoid financial loss to claimants or policyholders because of the insolvency of an insurer . . . and to provide an association to assess the cost of such protection among insurers." *Id.* § 4432. MIGA is funded through the assessment of fees to "member insurers," which pass on the costs of such assessments to their insureds through "rates and premiums charged for insurance policies[.]" *Id.* §§ 4440(1), 4447.

Under the Act, MIGA is "obligated to pay" certain "covered claims" against "insolvent insurers" in "[a]n amount not exceeding $300,000 per claim" based on property insurance coverage. *Id.* § 4438(1)(A)(3); *see also id.* §§ 4433(1)(A) (providing the Act applies to property insurance), 705 (defining "property insurance"). Additionally, MIGA is "deemed the insurer to the extent of its obligation on covered claims, and to such extent the insurer shall have all rights,

---

[1] While a finder of fact may ultimately find that alter ego liability applies in the present case, it strikes the Court that there is a distinction between the question of whether a party is liable under an insurance contract and whether a party is deemed to be the insurer under that contract. *See* 24-A M.R.S. § 4 ("'Insurer' includes every person engaged as principal and as indemnitor, surety or contractor in the business of entering into contracts for insurance."). For example, if this were a traditional case of piercing the corporate veil and the Arbos sought to hold Tower or York's corporate officers liable under the insurance contract, it would not stand to reason that those corporate officers would be deemed the "insurer" under the contract. However, for the reasons stated below, the Court need not resolve this issue to determine whether MIGA can be held liable if Tower Group, Inc. were deemed the Arbos' insurer.

duties and obligations of the insolvent insurer as if the insurer had not become insolvent." 24-A M.R.S. § 4438(1)(B).

### 1. Tower Group, Inc. as "Member Insurer" or "Insolvent Insurer"

An "insolvent insurer" is a "member insurer" that is "[a]uthorized to transact insurance in this State either at the time the policy was issued or when the insured event occurred; and [a]gainst whom a final order of liquidation has been entered with a finding of insolvency by a court of competent jurisdiction." 24-A M.R.S. § 4435(5). A "member insurer" is an "authorized insurer that writes any kind of insurance to which [the Maine Insurance Guarantee Association Act] applies . . . ." *Id.* § 4435(4).

There is no evidence in the summary judgment record indicating Tower Group, Inc. was ever authorized to transact insurance in Maine, had a final order of liquidation with a finding of insolvency entered against it, or wrote insurance policies. Thus, even if Tower were deemed to be the Arbos' "insurer" as defined in 24-A M.R.S. § 4, Plaintiffs have failed to set forth a *prima facie* case that Tower could be deemed an "insolvent insurer" or "member insurer" such that MIGA could be held liable for any of Tower's obligations under the Arbos' insurance contract.

Accordingly, MIGA is entitled to summary judgment on the breach of contract count of the Plaintiffs' Complaint because either (1) if York is deemed to be the insurer, the Arbos' claim is time-barred under the insurance contract, or (2) if Tower is deemed to be the insurer, it is not an insolvent and/or member insurer such that MIGA would be obligated to pay any of the Plaintiffs' covered claims.

### 2. MIGA's Liability Under Theories of Estoppel, Unfair Claim Settlement Practices

The Arbos' ability to prevail against MIGA on the remaining counts of their complaint— (1) seeking to estop Tower from asserting the statute of limitations applicable to domestic

10

insurers based on the conduct of Tower and York's agents, and (2) seeking to recover for Tower's allegedly unfair claim settlement practices—depend on their contention that MIGA is liable to the same extent as an insolvent insurer. MIGA, on the other hand, contends its exposure is limited by statute.

As stated above, MIGA is "deemed the insurer to the extent of its obligation on covered claims, and to such extent the insurer shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent." 24-A M.R.S. § 4438(1)(B). Plaintiffs contend section 4438(1)(B) requires MIGA to step into the shoes of the insolvent insurer such that it can be bound by the actions of the insolvent insurer's agents.

MIGA contends that it is "legally distinct and independent from the insolvent insurer" and that "it cannot be estopped from denying coverage based on the acts of the insolvent insurer prior to its insolvency." (Def.'s Relpy at 7, n. 3.) MIGA notes the Connecticut Supreme Court has held that an insurer's "preinsolvency misconduct during the underlying litigation does not estop the [insurance guarantee] association from challenging the existence of a covered claim, which is the predicate for its liability under the guaranty act." *Conn. Ins. Guar. Ass'n v. Drown*, 101 A.3d 200, 206 (Conn. 2014).

An action for unfair claim settlement practices is a cause of action separate and apart from a claim for non-payment under an insurance contract. The Maine Insurance Code provides that "[a] person injured" by their insurer who "[w]ithout just cause, fail[s] to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear" is entitled to "bring a civil action and recover damages, together with costs and disbursements, reasonable attorney's fees and interest on damages at the rate of 1 1/2% per month[.]" 24-A M.R.S. § 2436-A. Notably,

11

MIGA is obligated to pay only the "covered claims" of insolvent insurers. *See id.* § 4438(1)(A). A "covered claim" is defined in part as "an unpaid claim, including one for unearned premiums but excluding one for punitive damages, arising under and within the coverage and applicable limits of a policy . . . ." *Id.* § 4435(4).

The Arbos point to no provision of their insurance policy under which they would be entitled to damages, fees, and interest of the type they seek in their unfair claim settlement practices claim. As such, that claim does not "aris[e] under or within the coverage and applicable limits of [their] policy" such that MIGA would be obligated to pay under section 4438.

In sum, Plaintiffs provide no legal basis under which MIGA could be estopped by the actions of Tower/York's agents or would be obligated to pay damages to the Arbos for whatever extra-contractual damages Tower or York would be obligated to pay themselves. Moreover, for the reasons stated above, the Arbos have failed to demonstrate that Tower is an "insolvent insurer" such that MIGA would be obligated to pay any of the Arbos' claims against it.

III.    Conclusion & Order

For the reasons stated above, the Arbos have failed to put forth a *prima facie* case that would entitle them to recover against MIGA. Even if Tower Group, Inc., were deemed to be the Arbos' insurer under a theory of alter ego liability and thereby render the Arbos' claim timely under 24-A M.R.S. § 2433, Plaintiffs have failed to demonstrate how MIGA could ultimately be held liable for the Arbos' claims against Tower under the Maine Insurance Guarantee Association Act.

The entry shall be:

12

"Defendant Maine Insurance Guarantee Association's Motion for Summary Judgment on all counts of the Plaintiffs' Complaint is GRANTED."

SO ORDERED.

Dated: December 7, 2018

_____
John O'Neil, Jr.
Justice, Superior Court

Entered on the Docket on: 12/4/18
Copies sent to the following parties/counsel on: 12/4/18
Attorney Martin  Attorney Connolly
Attorney Edwards

13