STATE OF MAINE
ANDROSCOGGIN, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-08-228

*MGK — AND - 5/26/2011*

RECD AUBSC 05/26/11

TOWN OF POLAND

ORDER ON DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

v.

T&M MORTGAGE SOLUTIONS, INC., et al.

This court has before it Defendant Todd Johnson, Sr.'s ("Mr. Johnson") motion for summary judgment on counts II, IV, V, VI, and VIII of the plaintiff's complaint.

**BACKGROUND**

On July 9, 2007, Defendant T&M Mortgage Solutions, Inc. ("T&M") gave an Irrevocable Stand-By Letter of Credit (the "LOC") in favor of the Plaintiff, the Town of Poland ("Town") in the amount not to exceed $187,000.00. (Def.'s S.M.F. ¶ 1, *as qualified by* Pl.'s Opp. S.M.F. ¶ 1; Pl.'s S. Add'l M.F. ¶¶ 1-2, *as qualified by* Def.'s Rep. S.M.F. ¶¶ 1-2.) The parties dispute whether T&M had the financial capacity to provide the LOC to the Town prior to or on July 9, 2007. (Def.'s S.M.F. ¶¶ 1-2; Pl.'s Opp. S.M.F. ¶¶ 1-2, 9.)[1]

On July 9, 2007, T&M brokered a mortgage from Shanley Development, LLC to Quality Investments, LLC for $100,000 to build a road according to the specifications of the Town. (Def.'s S.M.F. ¶ 3, *as qualified by* Pl.'s Opp. S.M.F. ¶ 3; Johnson Aff. ¶ 3.)[2]

---

[1] T&M had one bank account at TD BankNorth ending in number 6433. (Pl.'s Opp. S.M.F. ¶¶ 1-2, 9.) According to T&M's own check register, the highest balance of that bank account in early July 2007 was $69,934.85. (*Id*.) On July 9, 2008, T&M's bank balance was $67,678.41. (Pl.'s S. Add'l M.F. ¶ 14.)

[2] T&M objects to paragraphs 3-11 of the Mr. Johnson's statement of material facts on the grounds that the affidavit in support of the statements is not based on personal knowledge. *See*

1

Shanley Development, LLC failed to complete the road in accordance with the Town's specifications. (Def.'s S.M.F. ¶ 5, *as qualified by* Pl.'s Opp. S.M.F. ¶ 5; Pl.'s Opp. S.M.F. ¶ 6; Pl.'s S. Add'l M.F. ¶ 19.) Mr. Johnson alleges that he had no reason to doubt that Shanley Development, LLC would not construct the road. (Def.'s S.M.F. ¶ 9.) As a result, Shanley defaulted on its mortgage to Quality Investments, LLC. (Def.'s S.M.F. ¶ 6; Pl.'s Opp. S.M.F. ¶ 6.) On or about June 30, 2008, the Town demanded payment of the $187,000 in accordance with the terms of the LOC. (Def.'s S.M.F. ¶ 6; Pl.'s Opp. S.M.F. ¶ 6; Pl.'s S. Add'l M.F. ¶ 3.) T&M failed to pay any of the $187,000 demand or give notice of any discrepancies of the performance of demand. (Pl.'s S.M.F. ¶ 4.)

The parties dispute whether the Town, T&M or Mr. Johnson prepared the LOC. (Pl.'s S. Add'l M.F. ¶ 8; Def.'s Rep. S.M.F. ¶ 8.)[3] The LOC, signed by Mr. Johnson and issued to T&M states:

> If demand for payment is made and presented to you hereunder at or before 12:00 p.m. local time at the Corporation location on a Business Day, and provided that such demand for payment conforms to the terms and conditions hereof, payment of the amount demanded shall be made to you in immediately available funds on or before the close of business on the third Business Day after the Business Day on which demand for payment and presentation of all necessary documents is made. If demand for payment is made and presented to you hereunder after 12:00 p.m. local time at the Corporation location on a Business Day, and provided that such demand for payment conforms to the terms and conditions hereof, payment shall be made to you in the amount demanded in immediately available funds on or before the close of business of the fourth Business Day following the Business Day on which demand for payment and presentation of all necessary documents is made.

---

M.R. Civ. P. 56(e) (stating that affidavits must be based on personal knowledge). However, Mr. Johnson's affidavit, dated August 2, 2010 explicitly states: "*I make this Affidavit on personal knowledge of the facts* except to those matters stated to be upon information and belief, and as to those matters, I believe them to be true." (Johnson Aff. ¶ 1 (emphasis added).)

[3] The Comprehensive Land Use Code of the Town requires performance bonds or other forms of security with respect to projects like the road project in this case. (Pl.'s S.M.F. ¶ 8.) In this case, T&M provided security in the form of the LOC. (*Id.*) A provision of such security is part of the application process. (*Id.*)

2

> We engage with you that the draft(s) drawn hereunder and in compliance with the terms of this Irrevocable Standby Letter of Credit will be duly honored by us upon delivery of documents specified, if presented at the Corporation location on or before July 9, 2008.

(Pl.'s S. Add'l M.F. ¶ 9; Pl.'s Ex. 1 at 2.) Subsequent to his failure to honor the LOC presented upon him, Mr. Johnson spoke with the Town's attorney over the phone and by email. (Pl.'s S. Add'l M.F. ¶¶ 11-12; Dench Aff. ¶¶ 6-8; Dench Aff. Ex. A.)[4] Mr. Johnson admitted that he misunderstood the LOC and that T&M would not be able to honor such a large LOC. (Pl.'s S. Add'l M.F. ¶ 11; Dench Aff. Ex. B.) Mr. Johnson questioned whether the Town should have accepted a LOC from T&M. (Def.'s Rep. S.M.F. ¶ 11; Dench Aff. Ex. B.) The parties dispute whether T&M had sufficient funds available to honor the LOC at any point during 2007 and 2008. (Pl.'s S. Add'l M.F. ¶ 13; Def.'s Rep. S.M.F. ¶ 13.)

The Town's code enforcement officer discussed attempts to collect the LOC on or about June 30, 2008 with representatives of T&M and Mr. Johnson. (Pl.'s S. Add'l M.F. ¶ 7.) Mr. Johnson and T&M's representatives refused to sign the site draft for the LOC. (Pl.'s S. Add'l M.F. ¶ 7, *as qualified by* Def.'s Rep. S.M.F. ¶ 7.) By October 21, 2009, the mortgage market had collapsed and T&M's revenue had decreased. (Def.'s S.M.F. ¶ 9.) T&M could not supply the financial requirements of the Maine Department of Environmental Protection.[5] (*Id.*)

---

[4] The defendant objects to the affidavit of Bryan Dench because he signed the pleadings and submitted an affidavit. (Defs.' Rep. S.M.F. ¶ 10.) However, Mr. Dench's affidavit is based on personal knowledge and the fact that he is the Town's attorney does not render him incompetent to testify. M.R. Civ. P. 56(e). The defendant also objects to the admission of Mr. Johnson's email. In the email, Mr. Johnson stated: "If we don't do the road, the Town will sue and possibly get judgment. Two years from now they'll still be trying to figure out how to finish the road. Only then the Town will have a $20,000 or more legal bill and a worthless judgment." (Pl.'s S. Add'l M.F. ¶ 10; Dench Aff. ¶ 7; Dench Aff. Ex. A.) The admissibility of this statement is discussed below.

[5] The Maine Department of Environmental Protection required one of three conditions to complete the storm water portion of the road development: a commitment from a financial

3

The Town claims that without the LOC, it would not have agreed to move forward with the subdivision project. (Pl.'s S. Add'l M.F. ¶ 18.) The Town asserts that Mr. Johnson admitted that the LOC had been issued to induce the Town to give subdivision approval and that Mr. Johnson knew the Town would rely on the LOC. (Pl.'s S. Add'l M.F. ¶ 12; Dench Aff. ¶ 6.) The Town also asserts that Mr. Johnson told the Town's attorney that he should have known better than to accept a LOC from T&M and that he never intended to honor the LOC. (*Id.*) Mr. Johnson denies these claims. (Def.'s Rep. S.M.F. ¶ 12.) Mr. Johnson also alleges that these claims were made during settlement discussions and are therefore inadmissible. (*Id.*)

Mr. Johnson is the sole officer of T&M and at all times was acting as the President of T&M. (Pl.'s Opp. S.M.F. ¶¶ 4-11; Pl.'s S. Add'l M.F. ¶ 5; Def.'s Rep. S.M.F. ¶¶ 5-6; Johnson Aff. ¶ 9.) Mr. Johnson signed the LOC. (Pl.'s S. Add'l M.F. ¶ 6.) Mr. Johnson did so as an officer of T&M. (Def.'s Rep. S.M.F. ¶ 6.) Mr. Johnson alleges that his company observed the corporate formalities for a shareholder operated, closely held corporation. (Def.'s S.M.F. ¶¶ 7, 11.)

From January 2007 to June 2008, T&M wrote a number of checks to Mr. Johnson, some after the date of the LOC. (Pl.'s S. Add'l M.F. ¶ 15, *as qualified by* Def.'s Rep. S.M.F. ¶ 15.) Mr. Johnson also operates a d/b/a out of the same physical address as T&M at 259 Minot Avenue in Auburn, Maine. (Pl.'s S. Add'l M.F. ¶ 16.) The Town alleges that from the period of January of 2007 to June of 2008, T&M wrote 11 checks, the majority of which were signed by Mr. Johnson and totaled $29,000 to the d/b/a

---

institution or funding agency; the most recent corporate report with supporting documents indicating sufficient funds to finance the development; or bank statements or other evidence indicating availability of unencumbered funds when the developer will finance the project. (Def.'s S.M.F. ¶ 8.) The plaintiff objects to this statement on the grounds that it is hearsay and irrelevant to the matters at issue in this case. (Pl.'s Opp. S.M.F. ¶ 8.)

4

T&M Realty, which manages Mr. Johnson's real estate holdings. (*Id.*; Def.'s Rep. S.M.F. ¶ 16.) Mr. Johnson alleges that for the 18 month period, T&M paid T&M Realty $32,000 in rent and that T&M Realty d/b/a Mr. Johnson loaned T&M $20,000. (*Id.*; Def.'s Rep. S.M.F. ¶ 17; Pl.'s S. Add'l M.F. ¶ 17.)[6]

Neither Mr. Johnson nor T&M maintained any records with respect to its LOC or its dealings with Shanley Development, LLC. (Pl.'s S. Add'l M.F. ¶ 20.) Neither Mr. Johnson nor T&M kept any documents, notes, memoranda, diaries, journals, email messages and printouts, calendars, date books, appointment books, or other writings with respect to the issuance of the LOC. (Pl.'s S. Add'l M.F. ¶ 21.) Mr. Johnston claims that he did not document the dealings with Shanley Development, LLC because he were not aware that T&M needed a LOC until Jack Stanley asked him to sign the LOC and he never had any contact with the Town prior to the execution of the LOC. (Def.'s Rep. S.M.F. ¶¶ 18, 20-21.)

The Town filed an eight count complaint alleging: count I – wrongfully dishonoring a letter of credit, 11 M.R.S. § 5-1108; count II – interest and attorneys' fees under 11 M.R.S. §§ 5-1111(4) and 5-1111(5); count III – fraud; count IV – negligent misrepresentation; count V – deceptive trade practices, 10 M.R.S. § 1211, *et seq.*; count VI – unfair trade practices, 5 M.R.S. § 205-A, *et seq.*; count VII – attorneys' fees and costs, 5 M.R.S. § 213(2); and count VIII – punitive damages.

On December 4, 2008, the court granted an attachment and trustee process in the amount of $187,000 in the Town's favor. Through trustee process, the Town was able to secure from T&M's sole bank account the amount of $20,462.09. On February 12, 2009,

---

[6] On October 19, 2007, T&M Realty wrote a check signed by Mr. Johnson to Todd Johnson, Jr. in the amount of $400. (Pl.'s S. Add'l M.F. ¶ 17.) The Town states that the check was for $450, but the record cited clearly states that the check was for $400. (*See* Pl.'s Ex. 9.)

5

the court granted the Defendants' Motion to Substitute Four Parcels of Property for $20,462.09 Levied on the defendants' bank account. The Town appealed, and the Law Court vacated the Superior Court's modification. *See Town of Poland v. T&M Mortgage Solutions, Inc.*, 2010 ME 2, 987 A.2d 524. On remand, the court granted summary judgment in the Town's favor on counts I and II of the plaintiff's complaint against T&M exclusively in the amounts of $187,000, plus interest from July 9, 2008 and attorneys' fees. The court ordered additional trustee process with respect to the outlying $187,000 against T&M and ordered T&M to provide $20,462.09 to satisfy the judgment in the case to be held by the court as security for potential judgment. *See* M.R. Civ. P. 4B(j). T&M has not provided this amount to the court. The Town sought additional attachment and trustee process from T&M's sole bank account and found that the $20,462.09 has been depleted. (Pl.'s S. Add'l M.F. ¶ 28.)[7]

## DISCUSSION

### I. Standard of Review

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). In considering a motion for summary judgment, the court should consider the facts in the light most favorable to the non-moving party. The court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *See e.g., Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702, 704.

---

[7] Mr. Johnson objects to the recitation of the procedural history on relevance grounds. (Defs.' Rep. S.M.F. ¶¶ 24-29.)

6

## II. Settlement Evidence

Mr. Johnson claims that the statements made in his emails to the Town's attorney constitute conduct or statements made in compromise negotiations and should therefore be inadmissible. The Town claims that because the conversations pre-date the litigation and do not concern the substantive issues in dispute, they are not inadmissible.[8]

> M.R. Evid. 408(a) that evidence of "conduct or statements made in compromise negotiations is . . . not admissible on any substantive issue in dispute between the parties." We have previously stated that we liberally construe the phrase "compromise negotiations" in order to cultivate the conditions that are conducive to settlement. *See Guy Gannett Pub. v. Univ. of Maine*, 555 A.2d 470, 472-73 (Me. 1989). Neither an offer to compromise nor compromise negotiations may take place, however, in the absence of a dispute. The law maintains "no policy of encouraging compromises of undisputed claims. They should be paid in full." McCormick, *Evidence* § 274 at 811 (3d ed. 1984). *See Goon v. Gee Kung Tong, Inc.*, 544 A.2d 277, 281-82 (D.C. App. 1988) (No dispute exists unless a party *purposefully* contests either the validity of a claim or the amount claimed.). "The determination of whether the statement was a part of compromise negotiations is exclusively for the court under Rule 104." Field & Murray, Maine Evidence § 408.1 at 128 (2d ed. 1987).

*Greenstreet v. Brown*, 623 A.2d 1270, 1271 (Me. 1993). Here, though the September 4, 2008 email indicates that the parties contemplated settlement in lieu of litigation, these statements were made about a potential, not actual dispute. *See* Field & Murray, *Maine Evidence* § 408.1 at 165 (4th ed. 1997). Additionally, the statements do not appear to be conducive to settlement. In fact, Mr. Johnson's statements indicate that he was encouraging the Town to file suit. Therefore, the statements are admissible.

## III. Piercing the Corporate Veil

Because corporations are generally treated as "separate legal entities with limited liability," in order to pierce the corporate veil a plaintiff must show "(1) some manner of

---

[8] The Town also alleges that Mr. Johnson's reply is a day late and should therefore be disregarded. However, the reply was only one day late.

dominating, abusing, or misusing the corporate form; and (2) an unjust or inequitable result that would arise if the court recognized the separate corporate existence." *Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶¶ 5-6, 720 A.2d 568, 571. "Whether the corporate form should be disregarded involves questions of fact for a fact-finder to decide." *Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 43, 980 A.2d 1270, 1280 (citing *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 10, 901 A.2d 189, 195).

To determine whether an officer, director, or shareholder abused the corporate form, courts weigh several factors, including:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity[,] assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; [and] (12) use of the corporation in promoting fraud.

*Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶ 7, 720 A.2d 568, 571 (quoting *The George Hyman Constr. Co. v. Gateman*, 16 F. Supp. 2d 129, 149-50 (D. Mass. 1998)). "[T]he twelve factors apply whether the defendant is a corporate shareholder or individual shareholder, although some factors 'may seem better suited to one inquiry than the other.'" *Id.* ¶ 7 n. 3, 720 A.2d at 571 (quoting *The George Hyman Constr. Co.*, 16 F. Supp. 2d at 150). Additionally, "a [fact finder] could find abuse without finding fraud." *Advanced Const. Corp.*, 2006 ME 84, ¶ 11, 901 A.2d 189, 195.

Here, there is a dispute as to whether Mr. Johnson abused the corporate form. There is no dispute that Mr. Johnson is T&M's sole officer. The parties dispute whether T&M had sufficient funds at the time Mr. Johnson signed the LOC, whether Mr. Johnson signed the LOC to induce the Town to grant approval of the subdivision, and whether Mr. Johnson ever intended to honor the LOC. Furthermore, there is a dispute

8

whether Mr. Johnson moved funds from T&M's accounts to his own or to T&M Realty's accounts in an effort to deprive the Town of its judgment. Accordingly, summary judgment is denied.

## IV. Individual Corporate Officer Liability

Corporate officers who exercise control over a corporation may be held personally liable for participating in a wrongful act. *See Blue Star Corp.*, 2009 ME 101, ¶ 44, 980 A.2d at 1280 (citing *Advanced Const. Corp.*, 2006 ME 84, ¶ 13, 901 A.2d at 195 (internal citations omitted)). It is possible for a corporate officer to be personally liable for his conduct even without piercing the corporate veil. *See Advanced Const., Corp.* 2006 ME 84, ¶ 13, 901 A.2d at 195. According to the Law Court, "individual liability stems from participation in a wrongful act, and not from facts that must be found in order to pierce the corporate veil." *Id.* (citations omitted). Cases applying the responsible corporate officer doctrine for actions based in contracts involve allegations of fraud or deceptive practices. *See, e.g., id.; Blue Star Corp.*, 2009 ME 101, ¶¶ 46-47, 980 A.2d at 1281. Whether the individual officer participated in a wrongful act "also is a fact question for the fact-finder to decide." *Blue Star Corp.*, 2009 ME 101, ¶¶ 44, 980 A.2d at 1280.

Mr. Johnson first alleges that there was no wrongful act because there was sufficient money to honor the LOC. Mr. Johnson also asserts that his conduct in tendering the LOC was not fraudulent. Mr. Johnson claims that the only allegation of wrongdoing is that T&M lacked the financial capacity to honor the LOC, but in fact T&M had sufficient income.[9] As mentioned above, there is a dispute as to whether Mr.

---

[9] Mr. Johnson further claims that the Town's conduct is worthy of Rule 11 sanctions.

9

Johnson participated in a wrongful act. Therefore, the court denies Mr. Johnson's motion for summary judgment.

## V. Tortious Conduct of an Agent

The Town also claims that Mr. Johnson may be liable through his tortious conduct as an agent of the corporation. "In an action for the tortious conduct of an agent, both the agent and the principal can be held liable." *Advanced Const. Corp.* 2006 ME 84, ¶ 16, 901 A.2d at 196. As its president, Mr. Johnson is an agent of T&M. *Id.* at ¶ 17, 901 A.2d at 196. The Town alleges tortious conduct based in fraud, negligent misrepresentation, and unfair trade practices.

### A. Fraud

To prevail on a claim for intentional fraud, the plaintiff must prove by clear and convincing evidence: (1) that the defendant made a false representation, (2) of a material fact, (3) with knowledge of its falsity or in reckless disregard of whether it is true or false, (4) for the purpose of inducing the plaintiff to act in reliance upon it, and, (5) the plaintiff justifiably relied upon the representation as true and acted upon it to the plaintiff's damage.

*Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 9, 832 A.2d 771, 773. "'The meaning and weight to be given the exhibits and the testimony of the witnesses is for the fact-finder to determine and must be upheld unless clearly erroneous.'" *Id.* ¶ 10, 832 A.2d at 773 (quoting *Jenkins, Inc. v. Walsh Bros., Inc.*, 2002 ME 168, P 7, 810 A.2d 929, 933). Therefore, whether Mr. Johnson's conduct was fraudulent is a question of fact.

### B. Negligent Misrepresentation

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

10

*Rand*, 2003 ME 122, ¶ 13, 832 A.2d at 774 (quoting Restatement (Second) Torts § 552(a)(1)). It is for the fact-finder to determine if Mr. Johnson exercised reasonable care. *Id.* "Accordingly, unlike fraud or deceit, the defendant's knowledge is largely immaterial for negligent misrepresentation, and the fact-finder's primary task is to ascertain whether the defendant's conduct was reasonable." *Id.*, ¶ 13, 832 A.2d at 775.

## C. Unfair Trade Practices

"Whether an act or practice is unfair or deceptive for purposes of section 207 of the UTPA cannot be defined precisely and must be determined by the factfinder on a case by case basis." *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 906 (Me. 1996). Accordingly, for the same reasons mentioned above, the defendant's motion for summary judgment is denied.

## CONCLUSION

The court DENIES the defendant's motion for summary judgment on counts II, IV, V, VI, and VIII of the plaintiff's complaint because there is an issue of fact as to whether Mr. Johnson abused the corporate form, participated in the wrongful acts alleged, or committed tortious acts as an agent of the corporation.

Date: _5/26/11_

MaryGay Kennedy
Justice, Superior Court

11

POLAND, TOWN OF - PLAINTIFF

Attorney for: POLAND, TOWN OF
BRYAN DENCH   - RETAINED 12/01/2008
SKELTON TAINTOR & ABBOTT
95 MAIN STREET
PO BOX 3200
AUBURN ME 04212-3200

Attorney for: POLAND, TOWN OF
ADAM R LEE   - RETAINED 12/01/2008
SKELTON TAINTOR & ABBOTT
95 MAIN STREET
PO BOX 3200
AUBURN ME 04212-3200


vs
T & M MORTGAGE SOLUTIONS INC - DEFENDANT

Attorney for: T & M MORTGAGE SOLUTIONS INC
JAMES AUDIFFRED   - RETAINED 01/06/2009
LAW OFFICE OF JAMES L AUDIFFRED
374 MAIN STREET
PO BOX 1005
SACO ME 04072


TODD JOHNSON   - DEFENDANT

Attorney for: TODD JOHNSON
JAMES AUDIFFRED   - RETAINED 01/06/2009
LAW OFFICE OF JAMES L AUDIFFRED
374 MAIN STREET
PO BOX 1005
SACO ME 04072

SUPERIOR COURT
ANDROSCOGGIN, ss.
Docket No   AUBSC-CV-2008-00228

**DOCKET RECORD**

Filing Document: COMPLAINT          Minor Case Type: OTHER STATUTORY ACTIONS
Filing Date: 12/01/2008

## Docket Events:

12/01/2008 FILING DOCUMENT - COMPLAINT FILED ON 12/01/2008

12/01/2008 Party(s):  POLAND, TOWN OF
          ATTORNEY - RETAINED ENTERED ON 12/01/2008
          Plaintiff's Attorney: BRYAN DENCH

12/01/2008 Party(s):  POLAND, TOWN OF
          ATTORNEY - RETAINED ENTERED ON 12/01/2008
          Plaintiff's Attorney: ADAM R LEE

12/01/2008 Party(s):  POLAND, TOWN OF
          MOTION - APPROVAL ATTACH/TRUSTEE PROC FILED ON 12/01/2008
          WITH MEMORANDUM OF LAW, AFFIDAVIT OF BRYAN DENCH, ESQ., AFFIDAVIT OF DANA LEE AND PROPOSED
          ORDER