STATE OF MAINE

Cumberland, ss.

BUSINESS AND CONSUMER DOCKET

AMH - cum- 8/16/2012

COLER & COLANTONIO, INC.

Plaintiff

v.

Docket No. BCD-CV-11-45

QUODDY BAY LNG, LLC
DONALD M. SMITH and
BRIAN W. SMITH

Defendants

## ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANT BRIAN W. SMITH

Defendant Brian W. Smith moves for summary judgment on all counts of the complaint

filed by Plaintiff Coler & Colantonio, Inc. (Coler). The court held oral argument August 15,

2012. For the reasons stated within, the motion is granted.

### FACTUAL BACKGROUND

Except where noted, the parties agree upon the following facts. Brian W. Smith is the

son of Defendant Donald M. Smith.[1] (Supp. S.M.F. ¶ 1; Opp. S.M.F. ¶ 1.) Smith worked for

Smith Cogeneration Management, Inc. (SCM), an Oklahoma corporation owned and controlled

by Donald Smith. (Supp. S.M.F. ¶¶ 2-3; Opp. S.M.F. ¶¶ 2-3; A.S.M.F. ¶ 24; Reply S.M.F. ¶

24.)[2] Smith was assigned to work with QBLNG in connection with its effort to promote and

develop a liquefied natural gas terminal in Maine. (Supp S.M.F. ¶ 4; Opp. S.M.F. ¶ 4.) Smith's

title with QBLNG was project manager, although the parties dispute the extent of Smith's

control over QBLNG. (Supp. S.M.F. ¶ 5; Opp. S.M.F. ¶ 5.) Smith started as a liaison between

---

[1] References to Smith in the memo are to Brian W. Smith; references to Donald Smith will state his full name.

[2] Coler objects that Donald Smith's control of SCM is not supported by the record citation because the affiant does not establish how she knows that Donald Smith "controls" SCM. (Opp. S.M.F. ¶ 3.) The affiant, Beverly Fenley, states that she has worked as a vice president at SCM since 1989; her employment at SCM provides adequate foundation for the disputed assertion.

SCM and QBLNG, but later became responsible for the day-to-day relationship between the two entities, supervised three QBLNG employees, and signed checks and other contracts for QBLNG. (A.S.M.F. ¶¶ 26, 28A, 28B; Reply S.M.F. ¶¶ 26, 28A, 28B.) Smith sought and met with potential investors in the pipeline project, negotiated with the Passamaquoddy Tribe, hired lawyers, and was involved in community relations at QBLNG. (A.S.M.F. ¶¶ 32, 35, 37; Reply S.M.F. ¶¶ 32, 35, 37.) On March 2, 2006, Smith, as QBLNG's project manager, signed the contract at issue with Coler. (Supp. S.M.F. ¶ 8; Opp. S.M.F. ¶ 8; A.S.M.F. ¶ 28; Reply S.M.F. ¶ 28.)

QBLNG had no employees of its own; it was operated by employees of SCM who were assigned to it. (A.S.M.F. ¶¶ 41, 53; Reply S.M.F. ¶¶ 41, 53.) Smith was not a member of QBLNG and did not own an equity interest in QBLNG or SCM. (Supp. S.M.F. ¶ 11; Opp. S.M.F. ¶ 11; A.S.M.F. ¶ 39; Reply S.M.F. ¶ 39.) Donald Smith has been the sole statutory manager of QBLNG since December 29, 2004. (Supp. S.M.F. ¶ 12; Opp. S.M.F. ¶ 12.) SCM billed QBLNG for Smith's services; those bills remain unpaid. (Supp. S.M.F. ¶¶ 6-7; Opp. S.M.F. ¶¶ 6-7.)

Coler presents a series of statements of material fact regarding Smith's involvement in closely related corporations, the alleged commingling of assets of those corporations, and Smith's ownership of a corporation that rented office space to QBLNG. (*See* A.S.M.F. ¶¶ 39-57.) None of these facts, however, is pertinent to the present motion.

Coler initiated suit January 23, 2009, in Washington County Superior Court. Smith moved for summary judgment on January 13, 2010, but the motion was put off at Coler's request because Smith had not complied with discovery and Coler could not fairly be required not respond to the motion. The motion was fully briefed on December 2, 2011. The case was approved for transfer to the Business and Consumer Court on December 13, 2011. Oral

2

argument was specifically requested by Coler's counsel, and was originally scheduled for a date in April 2012. Due to the court's and counsel's schedules, oral argument was not held until August 15, 2012. However, the delay in resolution of Smith's summary judgment motion has not delayed the resolution of the case as a whole, because Coler's claims against Donald Smith remain pending and stayed as a result of Donald Smith's bankruptcy filing.

ANALYSIS

1. *The Summary Judgment Standard*

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778 (quotations omitted). A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. A party wishing to avoid summary judgment must present a prima facie case for the claim or defense that is asserted. *Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63.

2. *Count III as the Predicate for Brian Smith's Personal Liability to Coler*

Smith's summary judgment motion is directed to all three counts of the complaint, but his and Coler's briefing focused only on Count III, the claim of piercing the corporate veil as to Donald and Brian Smith. The parties did not address issues of law or fact on Counts I and II of the complaint, which assert claims for breach of contract and *quantum meruit* as to all three

3

Defendants. At oral argument, the court asked Coler's counsel whether Brian Smith's liability on Counts I and II hinged on Coler's veil-piercing claim in Count III or whether Coler was asserting that Brian Smith was liable on Counts I and II regardless of whether Coler succeeds on Count III. Coler's counsel acknowledged—correctly in the court's view based on the present record—that Brian Smith cannot be held liable on Counts I and II unless Coler prevails on its veil-piercing claim in Count III. The present record does not establish any basis on which Smith could be deemed liable to Coler on Counts I and II unless Coler succeeds on its Count III veil-piercing claim as to Smith. The parties' exclusive focus on Count III in their briefing is thus *apropos*.

### 3. *Maine Law on Piercing the Corporate Veil*

QBLNG is a limited liability company (LLC), not a corporation, but, as Coler's counsel also acknowledged at oral argument, this is a distinction without a difference—the law on piercing the corporate veil applies as well to piercing the LLC veil. A shared purpose of the corporate form and the LLC form is to limit the liability of the shareholders and members of such entities, and the law applicable to piercing the corporate form is also applicable to piercing the LLC form.

"As a matter of public policy, 'corporations are separate legal entities with limited liability.'" *Johnson v. Exclusive Props. Unltd., Inc.*, 1998 ME 244, ¶ 5, 720 A.2d 568 (quoting *Theberge v. Darbro Inc.*, 684 A.2d 1298, 1301 (Me. 1996)). Courts are "reluctant to disregard the legal entity and will cautiously do so only when necessary to promote justice." *Anderson v. Kennebec River Pulp & Paper Co.*, 433 A.2d 752, 756 n.5 (Me. 1981). "[B]efore a court may pierce the corporate veil, a plaintiff must establish that: (1) the defendant abused a privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence." *Johnson*, 1998 ME 244, ¶ 6, 720 A.2d 568.

4

Whether there has been an abuse of the corporate form is an intensive factual inquiry balancing twelve different factors that is not suitable for summary judgment. *See Johnson*, 1998 ME 244, ¶ 7, 720 A.2d 568 (listing twelve factors that must be balanced to determine whether there has been an abuse of the corporate form).

Maine case law makes it clear that only shareholders may be held personally liable on a theory of piercing the corporate veil. *See Thibodeau v. Cole*, 1999 ME 150, ¶ 7, 740 A.2d 40 (affirming summary judgment in favor of an individual for plaintiff's claims of personal injury that occurred on a corporation's property because the defendant did not own shares in the corporation); *LaBelle v. Crepeau*, 593 A.2d 653, 655 (Me. 1991) ("One of the principal benefits offered by the corporate form of organization is limited liability for *shareholders*.") (emphasis added).

The personal liability of officers, directors and other participants in a corporation who are not shareholders is analyzed differently:

> Separate from the issue of piercing the corporate veil, "[c]orporate officers who participate in wrongful acts can be held liable for their individual acts, and such liability is distinct from piercing the corporate veil. . . . The individual liability stems from participation in a wrongful act, and not from facts that must be found in order to pierce the corporate veil."

*Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 44, 980 A.2d 1270 (quoting *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 13, 901 A.2d 189).

4. *The Law Applied to The Facts of this Case*

On the basis of the just-cited Maine case law, Smith asserts that because he had no ownership interest in QBLNG, he cannot be held personally liable to Coler on a theory of piercing the corporate veil. (Def.'s MSJ 6-7.) He also asserts he did not exercise the kind of control and dominance over QBLNG essential to a determination to pierce the LLC veil.

5

Coler argues, based on series of cases from other jurisdictions, that non-owner officers and directors can be "held liable for wrongful corporate conduct under the piercing theory because of their ability to control the traditional corporation." (Pl.'s Opp'n MSJ 6, 13-14.)

In *Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc.*, 754 F.2d 10 (1st Cir. 1985), the First Circuit affirmed a jury's verdict in a debt collection action against the defendant corporation, its principal shareholder and his wife, and two other closely held corporations of the couple based on evidence that the three corporations "were run as a single enterprise for the personal benefit" of the couple. *Id.* at 14. Coler cites the First Circuit's quote from a Massachusetts state case: "a 'corporation or other person controlling a corporation and directing, or participating actively in its operations may become subject to civil or criminal liability on principles of agency or of causation.'" *Id.* at 15 (quoting *My Bread Baking Co. v. Cumberland Farms, Inc.*, 233 N.E.2d 748, 751 (Mass. 1968)).

The quoted language, however, does not say that non-owner officers and directors can be held liable for wrongful corporate conduct under the piercing theory; the language says simply that individual directors can be held criminally or civilly responsible for their own acts, consistent with Maine law. *See My Bread Baking*, 233 N.E.2d at 751 (citing cases in which directors were held responsible for their own acts); *cf. Blue Star Corp.*, 2009 ME 101, ¶ 44, 980 A.2d 1270. Further, just after the portion in *Pepsi-Cola* cited by Coler, the First Circuit goes on to state that the standard for holding *shareholders* liable is control and operation of the corporation for the shareholder's personal benefit and injustice if the separate corporate identity is recognized. 754 F.2d at 16. The case does not support Coler's position.

Coler also cites *Colon v. Blades*, 757 F. Supp. 2d 107 (D.P.R. 2010), and *I.R.S. v. Blais*, 612 F. Supp. 2d 700 (D. Mass. 1985). *Blais* lends no support to Coler's position, as it deals with collecting unpaid payroll taxes from a "responsible person" pursuant to 26 U.S.C.S. § 6672(a)

6

(1982). *Colon* arguably provides support for Coler's position: "Where the directors or officers use the corporation to commit fraud, courts will 'pierce the corporate veil' and hold those officers or directors personally liable." 757 F. Supp. 2d at 109 (quoting *Wadsworth Inc. v. Schwarz-Nin*, 951 F. Supp. 314, 322 (D.P.R. 1996) (citing *S. Porto Rico Sugar Corp. v. Junta Azucarera*, 88 P.R. 42 (P.R. 1963))). However, *Colon* appears to conflate what Maine law treats as the separate bodies of law regarding officer and director liability for personal wrongdoing and regarding piercing the corporate veil. In any event, the fact, acknowledged at oral argument, that Coler is not claiming that Brian Smith committed fraud removes this case from the above-stated rule of *Colon*.

At oral argument, Coler presented an additional case, *McCallum Family L.L.C. v. Winger*, 221 P.3d 69 (Colo. App. 2009), that does support Coler's argument that a non-shareholder who engaged in actions sufficient to justify piercing the LLC veil can be held personally liable.

For two reasons, this court does not deem *McCallum* or Coler's other extra-territorial legal authority applicable, and concludes that Smith is entitled to summary judgment.

First and foremost, Maine law, as reflected in the Law Court's decisions in *Thibodeau* and *Labelle*, clearly provides that only shareholders of corporations can be held liable on a theory of piercing the corporate veil. From that principle, it can readily be extrapolated that only members of an LLC can be deemed personally liable on a veil-piercing theory without proof of personal wrongdoing (beyond activity relevant to veil-piercing). Because he was not a member or otherwise the owner of any interest in QBLNG, Smith cannot be held personally liable for obligations of QBLNG on a theory of piercing the corporate veil.

A second and alternate basis for the same conclusion is that Coler has not made a *prima facie* showing that Brian Smith, as opposed to Donald Smith, engaged in actions with regard to

7

QBLNG specifically that are sufficient to justify holding him personally liable for QBLNG's debt to Coler on a veil-piercing theory.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant Brian W. Smith's Motion for Summary Judgment is granted.

As of now, this is not a final judgment because the claims against Donald Smith have not gone to judgment and are currently stayed. *See* M.R. Civ. P. 54(b)(1). Coler obtained a stipulated judgment against QBLNG in July 2009, but that judgment as well is not final because no Rule 54(b) determination was made in the judgment.

Any party is free to file a Rule 54(b) motion regarding this grant of summary judgment to Defendant Brian Smith and/or the stipulated judgment in Coler's favor against QBLNG. Counsel are requested to advise this court promptly regarding any material change in the status of Donald Smith's bankruptcy case as it relates to Coler's claims. If the bankruptcy stay as to the claims against Donald Smith is still in effect as of December 1, 2012, the clerk will schedule a telephonic conference of counsel thereafter to update the court on status.

Pursuant to M. R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Order by reference in the docket.

Dated August 16, 2012

A. M. Horton
Justice, Maine Business & Consumer Court

Entered on the Docket: 8|17|12
Copies sent via Mail ___ Electronically ✓

BCD-CV-11-45

COLER & COLANTONIO, INC.

       Plaintiff

v.

QUODDY BAY LNG, LLC
DONALD M. SMITH and
BRIAN M. SMITH

Attorneys:

For Plaintiff:  Rita M. Farry, Esq
               Kimmel, Beach & Fitzpatrick
               Paul Macri, Esq
               William Robitzek, Esq
               Berman & Simmons

For Defendant:   Arthur Greif , Esq
               Erik Black, Esq
               Gilbert & Greif